222-889. May it please the court, my name is Michael Aschenbrenner and I represent Plaintiff Appellant Richard Schafer. We're here today because of the variable rate contracts from Appellee Direct Energy. Contracts that are so bad the New York Public Service Commission has made them unlawful going forward. But that does nothing to address the harms that have already occurred. There are two primary issues before the court today. One, what does it mean to be clear and conspicuous under New York law? As Judge Calabrese noted in a companion case against Direct Energy at oral argument, this topic comes up again and again in the federal courts here because this is present in so many New York statutes. But hasn't this court already admittedly in a non-presidential opinion, but hasn't this in this contract? I'm glad your honor asked. There were two contracts at issue. What we call the initial contract and the renewal contract. And in the fort matter to which your honor refers, the court only considered the initial contract. Are we bound by what it said? We're not because it was a summary order, I know that. But just assume that it's precedential. Are we bound by its decision, the decision that it did make as to the initial language? Even if it is, even if it was precedential, we still have an argument to have here and the court can still make a different decision as to the renewal contract. Okay, but that's the renewal contract. Yes. But not the original contract. Well, I'm happy to argue about the initial contract as well, but I want to focus on the renewal contract for exactly this reason to avoid that summary order business and whether it's precedential. We have a very bad habit of deciding cases by summary order and then following them in the cases that follow. I've never quite gotten used to that myself. Please go ahead. Well, I'm getting used to it as well here, your honor. And so that's why we ask this question of what's clear and conspicuous be sent to the New York Court of Appeals. The New York Court of Appeals has never decided this, nor does the statute indicate the definition, nor do any statutes in New York, whether it's a gamble and wagering law that relies on clear and conspicuous or the Concealed Carry Improvement Act and a whole number of statutes in between. But I want to come back real quickly to this. Would we be asking the New York Court of Appeals, in effect, to re-examine Forte or Fortes? No. The Forte case has been decided and that's in the past. But we would be asking the New York Court of Appeals to set this standard for this case and all cases in the future to come. Right. But part of the reason one certifies is because we think that there's wildly varying opinions about what the New York courts would say. Where's the evidence suggesting that people don't have a general sense of what it actually is? Well, respectfully, your honor, my client, for one. Okay. Admittedly, because you got an answer you didn't want. Like where in the corpus of cases about clear and convincing and examining contracts, where are the cases suggesting different outcomes on the basis of what clearly and conspicuously means? Yes, your honor. And I understand the question. I'm going to focus on the district court's decision below and one particular point on that to answer that question. No, I'm sorry. I'm actually going to, I don't, what I'm asking is, is there wildly varying disagreement over what clearly and conspicuous means such that it would be worth it, not only for us to certify, but for the New York Court of Appeals to take it? Yes. I do not have any cases to cite to your honor this morning, but there are a variety of decisions in this circuit and beyond as to what it means to be clear and conspicuous. There are the FTC standard. There are what the court in Merck is stating. But if it's not actually confusing anybody, or we have no evidence that it's confusing anybody, why would we certify it? Because it meets the four factors. But isn't one of the factors that we need it to be able to accurately predict? The factors that I, as I understand them, your honor, are whether the New York Court of Appeals has spoken to it, which it has not. Whether the statute articulates the standard, which it does not. Then there are questions of public policy, and then whether the question would be determined, the answer to the question would be determinative in this case. And all of that is present here. Okay. How would you handle, how do you expect that we contend with our guidance provided to this court in RSD leasing versus Navistar? Which suggests that we, when we're asked in the absence of authoritative law from the state's highest court, we must either predict how the state court would resolve the state law, or if it's so uncertain, certify the question to the state's highest court. And I'm asking, what basis do you have for suggesting to me that it meets the standard that we are unable to predict how the highest court would resolve the question, without widely differing views on this? Well, I would never suggest this court's unable to do anything, but Go ahead. I'll tread carefully. I think there are different standards out there. None set by the New York Court of Appeals. Again, there's the FTC standard. There are different district courts have said one thing, different others have said another. Does it need to be bolded? Does it need to be highlighted? Does it need to be in a box? And Was the Fourth Second Circuit panel asked to certify? No. But it did come up in the oral argument, right? Weren't they talking about it? They certainly had it on their brains. Yes. Judge Calabresi mentioned it on his own. He would, yes. And suggested that might be an appropriate course of action because it comes up so often. What do you think is the appropriate answer to clearance contiguous? I think it's something similar to what the FTC says, which is that there are different things the court can look to. Is it bolded? Is it highlighted? Is the text larger than the surrounding text? Is attention brought to it? Would you agree that the charts bring some attention to it? Some. Not enough. But it's not necessary for the decision here today, Your Honor. Because the renewal contract did not have any such chart. So for the initial contract, there are the terms and conditions and the customer disclosure statement. And the court determined in Fort that the customer disclosure statement saved the otherwise inconspicuous variable rate disclosure in the terms and conditions. In the renewal contract, it's the exact same terms, but there was no customer disclosure statement sent along with it. What there was, was what Apelli calls a renewal notice, which was not incorporated by reference into the terms. And under Clarkson v. Krieger, 254 New York at 116, an explanatory letter included with an otherwise deficient contract does not save the contract. So in this regard, the initial contract and the renewal contract are positioned very differently. You'll get time back after rebuttal. Thank you. Thank you. Thank you, Your Honor. If there are no specific questions you have for me, I'll start. Well, I'm interested in whether or not you would agree that this case is different from Fort in connection with the renewal. I would not, Your Honor. Please tell us why. Because in Fort, the renewal notice and the renewal contract were at issue as well. And the Court of Appeals, the Fort panel, affirmed in full, meaning they necessarily decided the issue of the renewal agreement. Because it was before them. And because that opinion says that they have rejected every other, they have considered every other contention. We always say that next to the last sentence. Yes, you do. But it means a lot here. So can you help me untangle the distinction between something that is not precedential and something that is collaterally stopped? Sure, absolutely. Something that is the Fort order provides great guidance to this court. You asked Mr. Aschenbrenner what standard this court should apply. And he named the exact same standard that the Fort court did apply. Which highlights that Mr. Schaefer is not asking for a new standard. He is not proposing a new standard that the New York Court of Appeals might adopt. He is asking for a different application of that standard. Which is inappropriate for certification. As for the collateral estoppel effects of the Fort judgment, those are profound as well. Because Mr. Schaefer is not only a companion to the Fort case, he was a plaintiff in the Fort case. So because the Fort panel decided that both the initial contract and the renewal contract were clear and conspicuous as a matter of law under the same standard you heard Mr. Aschenbrenner say he wants the Court of Appeals to apply, the outcome would be no different at the Court of Appeals. So certification is inappropriate. And in addition to that, those issues are precluded. He's precluded from raising them again. Whether here or at the Court of Appeals or anywhere else. I'll join it. Go ahead with your presentation. And I think that leads to an important point, Your Honors. Mr. Schaefer is not arguing that you should reverse the District Court or that it erred in any way as to clarity being conspicuous, which is alone dispositive, right? They're asking that you ask the Court of Appeals for an advisory opinion, which the Court of Appeals has said they cannot do. Their statutory authority for accepting certified questions comes from the New York Constitution, which specifically says it must be an issue of law which will be determinative of the cause. And neither of those are met here. Mr. Schaefer is not asking that an issue of law be certified. He's asking that the Court of Appeals consider application of the standard in the first instance. And that's completely inappropriate. Would you dispute that the Court of Appeals has not addressed the clear and conspicuous language in 3490? Would you say that they've spoken on this or not? I would say they've spoken to the standard that should be applied. They have said that under their both 349 and 349D that an objective, reasonable person standard applies. And as the District Court below found here, that means would a reasonable person both understand the disclosure, meaning clarity, and would they see it? Meaning conspicuousness. So while the Court of Appeals has not specifically addressed the meaning of that term, they have said that an objective standard person applies here, and that is what every court has done here. All five judges who have considered these exact same contracts applied that standard that Mr. Schaeffer advocated for and that the New York Court of Appeals has endorsed, and have found them to be clear and conspicuous. What do you make of the argument that your colleague on the other side says about the FTC standards? What do we do with that? The FTC standard, again, is what the four panel applied. So the FTC standard when properly applied, finds our disclosures clear and conspicuous as a matter of law. Again, underscoring that we have no dispute about the standard. We agree. It's a reasonable person, acting reasonably under the circumstances, and one way you can test that is using the FTC factors. That's exactly what the four panel did, and they affirmed the district court in that case. To your Honor's point about confusion among the courts, you were correctly pointing out that you typically certify questions when there's wildly varying disagreement among the lower courts about a standard to be applied under New York law. And here, there is no wildly varying disagreement, and in fact, there's no disagreement at all. And all five judges to assess our disclosures, in addition to the New York PSC, which is tasked with enforcing 349D, have found our disclosures to be clear and conspicuous. So I still have not heard today what the question is that you would pose to the New York Court of Appeals. What question of law would you be asking? We all agree that it's an objective test and that the FTC factors are appropriate. Can we move on to the question of causation? That's something that your colleague suggests is something we reviewed in NOVO. How would you recommend or advise that we handle that? I would say that causation itself and the standard to apply to causation is not properly raised on appeal. There is no argument that the district court erred in its assessment of causation when it wisely interpreted injured by reason of to mean the same thing that it means under 349, which the New York Court of Appeals has spoken to time and time again. The only appellate issue that Mr. Schaeffer raises as to causation is that the district court misapplied the summary judgment standard under Rule 56. And under SELA text, that's just plainly untrue. We met our burden for summary judgment in two ways. We pointed out that the record affirmatively established no causation because Mr. Schaeffer did not look at his materials when he got them and at his deposition testified that once he looked at them, he very quickly saw the disclosures about the variable rate and understood what they meant. And we in response to summary judgment, Mr. Schaeffer came forward with no evidence. He said that today's not the day to do it. It must be done at a later date. But SELA text clearly forecloses that position. It's an essential element of his claim and he needed to come forward with some evidence of causation. Now he says we never deposed him in this case and that we didn't send an interrogatory. But of course as your honors are well aware, there was nothing preventing him from submitting a declaration if he could honestly satisfy causation. If your honors have no additional questions, I'll rest on the briefs. Thank you. There's a lot to tackle in two minutes. Is there an area where the court would like me to focus and rebuttal? How about this causation issue? Yes. So two points on that. One, the district court erred in its application of summary judgment, specifically in this way. The district court found that, quote, there was no evidence one way or the other whether Schaefer read or reviewed the contracts. That's at A244 of the appendix. But that's not true. In Schaefer's response to statement of material facts at number 14, his testimony, admittedly from the Ford case, not from this case, he testified that he did not recall sitting at his deposition if he saw it, but that he may have. And as the non-movement, the court was obligated to find any inferences and draw them in Schaefer's favor. But the court did not do that. It drew the inference instead. So you're asking us to say that he may have is enough? To create a genuine issue of material fact. That he created, right? Like there's not, I mean, he created the dispute, not there are facts that are actually in dispute. No, that there are facts in dispute, whether he saw that. He could come forth with a declaration in his motion for summary judgment that says... They're not saying he didn't. The reason they're saying he didn't read it is because he's not saying he did. So he created the dispute over whether or not he read it. Right? Like they didn't bring evidence saying he read it. Exactly. They brought no evidence, but they did state he did not read it, which is factually incorrect. But it's their obligation. We only have to come forth as the non-movement with evidence in support of our case if, if, and this is under INRI Omnicom, if they make their case first, otherwise we have no obligation to do so under CILOTAX and Rule 56, which has been amended since then. But assuming that he read the contract, does that, or let's assume that he didn't read the contract. How would that implicate the causation? Well, our position is that a consumer need not read the contract under 349 97 in order to be injured by reason of it. For one thing, it doesn't flow logically. Taking that position to its logical end. How can something be clearly, how can something be clear and conspicuous if they didn't have to read it? Like what's the point of making something clear and conspicuous if it doesn't at least suggest that there needs to be a reasonable, objective person, whatever that looks like, to have reviewed it? Well, this gets to one of the issues we briefed, which is the difference between deception, which would be under 349 D3 and is not at issue in this case. Deception is the standard used by the district court below and inappropriately in our position, in our view. And clear and conspicuous. Taking that to its logical end, they could avoid liability by not putting it in there at all. If it's never in there for the person to read, then they can never be injured. But they can also put it in 80-point font in neon letters, and if the person never read it, you'd claim they were injured. Like how do we... So clearly the extremes are not where this court needs to be to try and actually help anything. Can you help me throw the needle here? Yes, and that's the objective person standard, not the individual standard. Whether Schafer saw it or not... Would an objective person read the contract that they're then claiming they never knew was variable? I think a reasonable person is likely to glance at one of the many pieces of mail they get each day, and when they're faced with a contract that is wall-to-wall text in very fine point, they're not likely to find much. And in the renewal contract, as the district court below agreed, there was no box. There was nothing at all conspicuous. The district court held at A60 of the appendix. It was not conspicuous, but was saved by this external document that was not incorporated by reference. Thank you. Thank you. We'll take it under advisement.